UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
EVANSVILLE DIVISION

| | | |
|---|---|---|
| JEREMY B. LEIGHTY, | ) | |
| (Social Security No. XXX-XX-6802), | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 3:06-cv-60-RLY-WGH |
| | ) | |
| MICHAEL J. ASTRUE, COMMISSIONER | ) | |
| OF SOCIAL SECURITY,[1] | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM DECISION AND ORDER**

**I. Statement of the Case**

Plaintiff applied for Supplemental Security Income under the Social Security Act, claiming he was disabled. (R. 63-65). *See* 42 U.S.C. § 1382c. His application was denied initially, on reconsideration, and by an ALJ after a hearing. (R. 16-25, 28-38). The ALJ's decision became the final decision of the Commissioner of Social Security when the Appeals Council denied review. (R. 3-5). Plaintiff sought judicial review pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).

**II. Statement of the Issue**

The sole issue advanced by the Plaintiff is whether substantial evidence supports

---

[1] On February 12, 2007, Michael J. Astrue became the Commissioner of Social Security. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Michael J. Astrue, in his official capacity only, is substituted as the Defendant in this action.

the finding of the Administrative Law Judge ("ALJ") that Plaintiff did not meet or equal Section 12.05(C) of the Social Security Administration's Listing of Impairments – the listing for Mental Retardation – because Plaintiff was not mentally retarded, but rather had Borderline Intellectual Functioning.

### III.  Statement of the Facts[2]

Plaintiff was 27 years old when he filed his current application for benefits.  (R. 63).  He claimed he had been disabled since August 1991 (when he was 14 years old).  (R. 63).  He said he was disabled by back pain, right leg pain, degenerative disc disease, lumbar spondylosis, a reading disorder, and impulse control.  (R. 72).

**The Medical Records Relevant to the Issue Before the court:**

In 1985, at the age of eight, Plaintiff underwent intelligence testing and obtained a verbal intelligence quotient ("IQ") score of 67, a performance IQ score of 80, and a full-scale IQ score of 71.  (R. 255).  The doctor who administered the test explained that the test indicated ability at the borderline level (R. 256), and the doctor diagnosed Borderline Intellectual Functioning, as well as attention deficit disorder without hyperactivity (R. 256).

In 1993, at the age of 17, Plaintiff was evaluated at the mental health center at Good Samaritan Hospital and diagnosed with oppositional defiant disorder, cannabis abuse, nicotine dependence, attention deficit disorder by history, rule out conduct

---

[2]This statement is taken largely from Defendant's brief, although it has been amended in some respects as the court independently reviewed the record.

2

disorder, and Borderline Intellectual Functioning by history. (R. 233).

In January 2001, Plaintiff was accepted for treatment at the Samaritan Center. (R. 202). His diagnosis at that time was bipolar disorder (most recent depressed), alcohol dependence in remission, and Borderline Intellectual Functioning by history. (R. 202, 207). Plaintiff was discharged from the Samaritan Center in February 2002. (R. 176). He had failed several sessions and appointments and had not been seen in the Center since March 2001. (R. 176).

On September 2, 2003, after Plaintiff applied for Social Security benefits, Albert Fink, Ph.D., conducted a psychological evaluation of Plaintiff. (R. 139-41). During the evaluation, Plaintiff could explain proverbs; his memory functions were intact; and he had no difficulty with simple computations, including multiplying and performing serial seven subtractions. (R. 140). He knew the number of days in the year, but not the number of weeks; he did not know where the sun set; when asked to name four presidents since 1950, he named two appropriately, but also named Lincoln and Washington. (R. 140). On intelligence testing, Plaintiff obtained a verbal IQ of 69, a performance IQ of 72, and a full scale IQ of 67. The doctor explained that "[t]here was considerable intratest scatter, which, taken together with the overall range of subtest scores, suggests that there is some higher intellectual potential and that a conclusion of Borderline Intellectual functioning is appropriate." (R. 140). The doctor concluded that Plaintiff was "cognitively intact, with memory, comprehension and basic social skills within normal limits" and that "[f]ormal intelligence testing indicates Borderline functioning." (R. 141).

3

The doctor diagnosed Borderline Intellectual Functioning. (R. 141). The doctor also diagnosed a depressive disorder, a history of behavior problems that were in remission, and a history of a reading disorder. (R. 141). The doctor found a global assessment of functioning of 68, indicating only "mild" symptoms.

On February 5, 2004, Dr. Fink evaluated Plaintiff again. (R. 171-73). This time, Plaintiff claimed he could not multiply 12 x 5 (R. 172), although he had previously done this same problem for Dr. Fink "with ease" (R. 140). Plaintiff also "had difficulty" with serial seven subtractions (R. 172), even though he had previously done this for Dr. Fink "without difficulty" (R. 140). He was, however, able to do serial three subtractions with "no difficulty." (R. 172). The doctor again diagnosed Borderline Intellectual Functioning. (R. 173).

At the initial determination stage, the State Agency considered, among other documents, the report from South Knox School and the first report from Dr Fink which contained Dr. Fink's WAIS-III test administration. (R. 34). At the reconsideration stage, the State Agency considered, in addition to the records considered at the initial stage, the second report from Dr. Fink. (R. 38).

J. Gange, Ph.D., a State Agency psychologist, reviewed the evidence on behalf of the State Agency at the initial stage, and analyzed Plaintiff's Borderline Intellectual Functioning under Listing 12.02, for Organic Mental Disorders. (R. 117). He either did not evaluate or did not find that the Plaintiff met Listing 12.05. (R. 120, 126). Ultimately, the doctor advised that Plaintiff did not meet or equal any listing. (R. 116).

In discussing the evidence of record, the doctor observed that Plaintiff had been diagnosed with Borderline Intellectual Functioning. (R. 130). At the reconsideration stage, K. Neville, Ph.D., also a State Agency psychologist, reviewed the evidence of record and concurred in Dr. Gange's prior findings. (R. 130). Dr. Neville did find Plaintiff's impairments might interfere with complex task completion. (R. 130).

## IV.  Decision

**A.     The Substantial Evidence Standard of Review Applied to This Case**

The ALJ's findings, which represent the findings of the Commissioner of Social Security, are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g); *Powers v. Apfel,* 207 F.3d 431, 434 (7th Cir. 2000). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401 (1971). The ALJ had the duty to weigh the evidence, resolve material conflicts, and make findings of fact. *Perales,* 402 U.S. at 399-400. A reviewing court may not decide the facts anew, reweigh the evidence, or substitute its judgment for that of the ALJ. *Powers,* 207 F.3d at 434.

A court must affirm the ALJ's factual findings even if substantial evidence would support alternative findings, *id.*, and a court may reverse the Agency's decision on evidentiary grounds only if the evidence "*compels*" reversal. *I.N.S. v. Elias-Zacarias,* 502 U.S. 478, 481 n.1 (1992)(emphasis in original). If reasonable minds could disagree on whether a claimant is disabled, the court must affirm the ALJ's decision denying benefits.

*See Schmidt v. Apfel,* 201 F.3d 970, 972 (7th Cir. 2000).

**B.      Does substantial evidence support the ALJ's finding that Plaintiff was not disabled under Listing 12.05(C) for Mental Retardation?**

The ALJ found that Plaintiff had Borderline Intellectual Functioning with a reading disorder, degenerative disc disease, a depressive disorder, and anxiety. (R. 19, 23). The ALJ found that Plaintiff was not disabled under the Listing of Impairments (the "listings"). (R. 19).[3] *See* 20 C.F.R. § 416.920(d); 20 C.F.R. Part 404, Subpt. P, App. 1. He advised that he specifically considered several of the listings, including 12.05. The ALJ ultimately found that Plaintiff was not disabled because he could perform a significant number of exertionally light jobs. (R. 23-24). *See* 20 C.F.R § 416.920(g)(1). Plaintiff challenges only the ALJ's finding that he did not meet or equal Listing 12.05(C) for Mental Retardation.

Listing 12.05(C) provides, in pertinent part:[4]

> 12.05 *Mental retardation:* Mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the development period; *i.e.,* the evidence demonstrates or supports onset of the impairment before age 22.
>
> \* \* \* \* \*
>
> C.  A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and

---

[3] The listings provide a list of criteria for various medical conditions which, if met or equaled, are considered to be disabling. *See* 20 C.F.R. § 416.920(d).

[4] Plaintiff argues that subsection C applies in his brief (p. 3). He does not argue that A, B, or D are present here. There would be substantial evidence to support the ALJ's decision that none of A, B, or D's requirements are present here. For example, see Dr. Akaydin. (R. 144-47).

significant work-related limitation of function.

Plaintiff argues that "it is undisputed that the plaintiff is mentally retarded and that his mental retardation manifested itself prior to age 22." (Plaintiff's Brief at 2). He further asserts that "[t]he parties agree that in addition to mental retardation" he has other impairments and that "[i]t is simply undisputed that his mental retardation manifested itself prior to age 22." (Plaintiff's Brief at 3, 6). The government agrees that Plaintiff has some impairments other than Mental Retardation. However, the government disagrees that Plaintiff meets the listing for Mental Retardation found at 12.05(C).

The ALJ expressly found that Plaintiff had Borderline Intellectual Functioning, not Mental Retardation. (R. 19, 23). In the court's review of the record, no physician diagnosed plaintiff with "Mental Retardation." The evidence supports the ALJ's finding that Plaintiff had only Borderline Intellectual Functioning. Specifically, Plaintiff has consistently been diagnosed with "Borderline Intellectual Functioning" since he was a young child through the time period covered by the ALJ's decision by the State Agency physicians (R. 117, 130), Albert Fink, Ph.D. (R. 140-41, 173, 176), and the physicians during his treatments at the Samaritan Center and the Comprehensive Community Mental Health Center (R. 202, 207, 233, 256).

These professionals – presumably aware of a diagnostic difference between "Borderline Intellectual Functioning" and "Mental Retardation" for diagnostic purposes – have all chosen to place Plaintiff on the "Borderline Intellectual Functioning" side of the continuum. Borderline Intellectual Functioning is a different diagnosis than Mental

7

Retardation.  *See* American Psychiatric Ass'n, *Diagnostic & Statistical Manual of Mental Disorders* 40 (4th ed. text rev.) (hereinafter "*DSMM-IV-TR*").  While Borderline Intellectual Functioning is generally diagnosed where the IQ is in the 71-84 range, and Mental Retardation is generally diagnosed where the IQ is 71 or below, that is not always the case.  *See id*.  In fact, "it is possible to diagnose Mental Retardation in individuals with IQs between 70 and 75 who exhibit significant deficits in adaptive behavior.  Conversely, Mental Retardation would not be diagnosed in an individual with an IQ lower than 70 if there are no significant deficits or impairments in adaptive functioning."  *Id.*

The *DSMM-IV-TR* description leads this court to believe that a clinical diagnosis of "Borderline Intellectual Function" does not preclude a finding that an individual is also "mentally retarded" if there are "significant deficits in adaptive behavior."

This review, therefore, leaves the court in a quandry.  There is substantial evidence to support the ALJ's decision that Plaintiff suffers from "Borderline Intellectual Functioning."  However, does that decision preclude the Plaintiff from meeting Listing 12.05(C), and can we tell from the ALJ's decision that he did consider this issue?

Applying the facts to the listing, the court finds that the substantial evidence does support each element of the listing.  First, the Plaintiff has demonstrated that at age 8 (well before he was 22), he obtained a verbal IQ score of 67.  (R. 256).  On the only other and most recent IQ testing at age 26 he obtained a verbal IQ score of 69 and a full scale IQ of 67.  These scores are the only evidence to support one part of the listing – that he

8

has significantly subaverage intellectual functioning. There are no pieces of evidence showing higher test scores or diagnoses that he has abilities beyond Borderline Intellectual Functioning.

A second requirement of the listing is that the Plaintiff demonstrate "deficits in adaptive functioning initially manifested during the developmental period; *i.e.,* the evidence demonstrates or supports onset of the impairment before age 22." Here, the record is replete with such deficits; e.g., in 1992 (age 12), being held back in seventh grade, being "kicked out" of school, being in jail (R. 237); he was in special education programs and "LD Pull Out" at school (R. 239).

The third requirement of the listing is that the "C" criteria also be met. The "C" criteria again requires the presence of IQ testing between 60 and 70 and a "physical or other mental impairment imposing an additional and significant work-related limitation of function." Clearly, the ALJ did find these additional limitations. Specifically, the ALJ found reading disorder, degenerative disc disease, depressive disorder and anxiety which were severe enough to limit him to light work with a sit-stand option at one hour intervals. He is limited to performing simple, repetitive tasks and to occasional social contact with co-workers, supervisors and the public. (R. 24).

Therefore, it appears to this court that all of the evidence supports the elements of Listing 12.05(C), and that there is no evidence to the contrary. The explanatory comments to the Listing of Impairments at 12.00 provides, in part:

Each listing, except 12.05 and 12.09, consists of a statement describing the

>   disorder(s) addressed by the listing, paragraph A criteria (a set of medical findings), and paragraph B criteria (a set of impairment-related functional limitations).

>   \* \* \* \* \*

>   The structure of the listing for mental retardation (12.05) is different from that of the other mental disorders listings. Listing 12.05 contains an introductory paragraph with the diagnostic description for mental retardation. It also contains four sets of criteria (paragraphs A through D). If your impairment satisfies the diagnostic description in the introductory paragraph and any one of the four sets of criteria, we will find that your impairment meets the listing. Paragraphs A and B contain criteria that describe disorders we consider severe enough to prevent your doing any gainful activity without any additional assessment of functional limitations. For paragraph C, we will assess the degree of functional limitation the additional impairment(s) imposes to determine if it significantly limits your physical or mental ability to do basic work activities, *i.e.,* is a "severe" impairment(s), as defined in §§ 404.1520(c) and 416.920(c). If the additional impairment(s) does not cause limitations that are "severe" as defined in §§ 404.1520(c) and 416.920(c), we will not find that the additional impairment(s) imposes "an additional and significant work-related limitation of function," even if you are unable to do your past work because of the unique features of that work. Paragraph D contains the same functional criteria that are required under paragraph B of the other mental disorders listings.

It is possible that the ALJ in this case declined to find that the Plaintiff met Listing 12.05(C) because other impairments were not "severe." However, this is unlikely – he found the other impairments to be "severe" as defined in §§ 404.1520(c) and 416.920(c) (R. 23), the same requirements as described in Listing 12.00 as it explained the Commissioner's approach to Listing 12.05(C). This court is unable to trace the path of the ALJ's reasoning in this case that Plaintiff does not meet Listing of Impairment 12.05(C), and the court **REMANDS** the case for further clarification of whether the ALJ

10

considered the fact that a person clinically diagnosed with Borderline Intellectual Functioning might nevertheless meet the criteria for Listing 12.05(C).

**SO ORDERED** the 25th day of July 2007.

_____
RICHARD L. YOUNG, JUDGE
United States District Court
Southern District of Indiana

Electronic copies to:

J. Michael Woods
WOODS & WOODS
mwoods@woodslawyers.com

Thomas E. Kieper
UNITED STATES ATTORNEY'S
OFFICE
tom.kieper@usdoj.gov